IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUELINE A. GERMANO )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NEW YORK STATE, OFFICE OF MENTAL )<br>HEALTH )<br>Defendant. )<br>)<br>_____ ) | CIVIL ACTION NO.   6:22-cv-6543<br><br>COMPLAINT<br><br><u>JURY TRIAL DEMAND</u> |

**<u>NATURE OF THE ACTION</u>**

On behalf of Plaintiff Jacqueline A. Germano, (referred to hereinafter as "Plaintiff" or "Jackie Germano") for her complaint against New York State, Office of Mental Health (referred to hereinafter as "Defendant" or "Employer" or "NYSOMH" or "Rochester Psychiatric Center") states and alleges as follows:

**Jurisdiction and Venue**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, and the Age Discrimination in Employment Act of 1967 ("ADEA"), to correct unlawful and discriminatory practices on the basis of disability, age and sex and to provide appropriate relief to Plaintiff Jackie Germano, an

employee who was adversely affected by such practices.

2. This Court has original jurisdiction over this action, and each count, pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

3. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to unlawful discrimination by Defendant in Monroe County, New York area, within the Western District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a Complaint with the United States Equal Employment Opportunity Commission ("EEOC") under Federal Charge Number 525-2021-00562.

5. Subsequently, Plaintiff was issued a Determination And Notice Of Right To Sue letter by the EEOC, which was received by Plaintiff fewer than 90 days from the date hereof (Attached collectively hereto as Exhibit "**A**") and Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue Letters" dated September 8, 2022.

6. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, where Plaintiff was employed and continues to be employed by Defendant NYSOMH.

7. The employment practices complained of herein, including Disability discrimination, Age discrimination, and Sex discrimination were intentional and malicious in nature.

**PARTIES**

8. Plaintiff, Jacqueline Germano, a female and resident of Macedon, New York in Wayne County, is over the age of 40, having been born in 1959, was at all relevant times hereto, and remains, an employee of Defendant where she began employment as a Community Mental Health Nurse ("CMHN") on December 4, 2008, in Rochester, NY, in Monroe County.

9. Defendant, New York State, Office of Mental Health, employed Plaintiff at times relevant to this Complaint at its facility known as The Rochester Psychiatric Center. The Office of Mental Health operates psychiatric centers across the State, including the Rochester Psychiatric Center, and also regulates, certifies and oversees more than 4,500 programs, which are operated by local governments and nonprofit agencies. These programs include various inpatient and outpatient programs, emergency, community support, residential and family care programs, including services within Monroe County where Plaintiff was and remains employed by Defendant.

10. Defendant operates the Rochester Psychiatric Center within the jurisdiction of the Western District of New York and has continuously had at least 15 or more employees.

11. The Defendant has received Federal Funding and has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

**STATEMENT OF CLAIMS**

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. On or about February 10, 2021, Plaintiff filed a Complaint with the EEOC alleging that Defendant unlawfully discriminated against her in the course of her employment on

3

the basis of her disability, sex, and age and retaliated against her.

14. More specifically, Plaintiff alleges that Defendant discriminatorily and intentionally failed to duly accommodate her reasonable requests for accommodation or to even engage in the required interactive process and furthermore, it targeted her for retaliation.

15. Plaintiff was and is employed by Defendant as a CMHN on the Mobile Integration Team.

16. Plaintiff was and remains employed by Defendant in Monroe County, New York since she was hired by Defendant in 2008.

17. Beginning in the summer of 2020, Plaintiff Jacqueline Germano filed an application with Defendant to request a reasonable accommodation of a disability.

18. In a letter dated July 22, 2020, Plaintiff's physician, Dr. Jennifer Tibbens-Scalzo, M.D., memorialized that Plaintiff had been seen in her office on that same date and that she was to remain out of work until a follow up appointment two weeks from July 22. (Attached hereto as Exhibit "**B**".)

19. In a letter dated August 7, 2020, Dr. Scalzo wrote a letter confirming that Plaintiff had been seen in Dr. Scalzo's office on that date for an examination, and that she should remain out of work until a follow up appointment one month from August 7. (Attached hereto as Exhibit "**C**".)

20. In the August 7th letter, Dr. Scalzo opined that Plaintiff should work dayshift and that said shift would be best based upon her medical condition.

21. Defendant was, at the time, fully aware of Plaintiff's medical conditions. In Plaintiff's request for accommodations seeking to work the dayshift, Plaintiff notified Defendant that she had been diagnosed with depression, anxiety disorder, sleep disorder,

severe pain, lack of appetite and that she had been physically and mentally drained as a result of the shift Defendant had forced her to work.

22. The night shift Defendant had required Plaintiff to work had affected Plaintiff's ability to sleep, a major life activity, and thus to properly function as a Nurse when she was exhausted as a result of not having slept adequately or properly.

23. In a letter written on behalf of the Plaintiff by Dr. Scalzo, which was shared with Defendant, dated September 8, 2020, Dr. Scalzo confirmed that Plaintiff had been seen on that date for a medical examination and that she should remain out of work until a "reasonable accommodation review" was complete. (Attached hereto as Exhibit **"D"**.)

24. In a letter dated September 14, 2020, to Plaintiff from Robyn Harter, Human Resources Specialist with Defendant Rochester Psychiatric Center, Defendant informed Plaintiff that her request for reasonable accommodation to work the Day-Shift was denied. (Attached hereto as Exhibit **"E"**.) In the September 14, 2020, denial of reasonable accommodation, Defendant merely cited "a hardship on the operations of the Nursing Department as a basis for denying Plaintiff's request for a shift change to the Day-Shift from the night shift. Defendant did not cite specifically how granting Plaintiff's request would cause any hardship on Defendant.

25. In denying Plaintiff's request for a shift change, Defendant disregarded Plaintiff's seniority pursuant to the terms of the New York State Public Employees Federation (PEF) Bargaining Agreement pertaining to shift assignments.

26. Plaintiff is aware of CMHN Nurses employed by Defendant who had less seniority than Plaintiff and who were, upon information and belief, substantially younger than Plaintiff who had been assigned the Day-Shift.

27. In March 2020, Plaintiff had been put on Night Shift by Defendant as part of a re-

deployment of Community Mental Health Nurses to the Rochester Psychiatric Center, in the wake of the COVID-19 epidemic.

28. As part of that redeployment effort, Defendant completely ignored Plaintiff's seniority pursuant to the foregoing collective Bargaining Agreement.

29. As part of the redeployment of Community Mental Health Nurses to the Rochester Psychiatric Center, Plaintiff and other Nurses had only two days of notice and were required to work mandated shifts, without any dialogue as to the appropriateness of the assignment.

30. At the time Plaintiff was assigned to the night shift, she had not worked a night shift in approximately 30 years and working the night shift took a significant toll on Plaintiff's overall health including her ability to sleep properly, and it worsened her anxiety to the point of acquiring an Anxiety Disorder, and also caused Clinical Depression in Plaintiff that was diagnosed by Dr. Scalzo.

31. Plaintiff had been hired by Defendant to work the Day-Shifts, and she never expressed any interest in working night shifts.

32. When Dr. Scalzo pulled Plaintiff out of work on July 22, 2020, she also started Plaintiff on medication to treat the foregoing illnesses, including Depression and Anxiety Disorder.

33. Plaintiff also was suffering from decreased appetite at the time that Dr. Scalzo pulled Plaintiff out of work in July of 2020.

34. Defendant disregarded Plaintiff's conditions and symptoms when denying Plaintiff's request to work the Day-Shifts, and did not engage in any meaningful interactive

process with Plaintiff. (See subsequent request letter from Jennifer Tibbens-Scalzo dated November 10, 2020, hereto as Exhibit **"F"**.)

35. Had Defendant engaged meaningfully in the Interactive Process with Plaintiff, Defendant could have put Plaintiff on a Day-Shift without undue burden or hardship.

36. As a result of being pulled from work, Plaintiff used up over 4 months of Accrued Sick Time which she is entitled to have returned to her Sick Time Bank. (Attached hereto as Exhibit **"G"**.)

37. As a result of having Defendant's failure to accommodate Plaintiff's reasonable request to work the Day-Shifts, Plaintiff was forced to use Vacation Time and Holiday Time in addition to Sick Time, all of which she is entitled to have returned to her, or to be compensated for the value thereof.

38. Plaintiff was out of work for approximately four (4) months as a result of Defendant's failure to accommodate her request to work the Day-Shift.

39. Prior to being pulled from work by Dr. Scalzo, Plaintiff experienced adverse health effects from having to work night shifts, including severe emotional distress, loss of sleep, loss of appetite, depression, anxiety and was medicated for said disorders.

40. Plaintiff's illness, which Defendant also knew about and regarded her as being afflicted by, affected Major Life Activities, including the ability to work in certain circumstances, travel, concentrate, sleep and other major life activities.

41. Nevertheless, Plaintiff would have been able to perform the essential functions of her employment with accommodations from her employer, yet Defendant-Employer ceased to accommodate Plaintiff and indeed sought to sabotage her employment by refusing to consider granting her accommodation request or to even engage in the required interactive process.

7

42. Plaintiff was treated less favorably than male Nurses who were routinely permitted to work the Day-Shift whereas Defendant would routinely not allow Plaintiff and other female Nurses the ability to work the Day-Shift.

43. Defendant failed utterly in its duty to either accommodate Plaintiff, and also failed to even engage in the required interactive process.

44. Defendant failed utterly to engage in the required interactive process in terms of exploring ways in which Plaintiff could have been accommodated.

45. Plaintiff duly performed the essential functions of her position at all times relevant hereto despite her battle with Clinical Depression, Anxiety Disorder and the symptoms thereof.

46. Plaintiff is currently employed by Defendant on the Day-Shift, working in the Outpatient Clinic. She returned to work on November 16, 2020.

47. Had Defendant tried to work with Plaintiff, and had Defendant not impeded the efforts of Plaintiff and her doctor to manage her illness and work life, Plaintiff hereby asserts that she could have continued gainful employment at NYSOMH during the approximately four-month period in question, and that a Day-Shift accommodation would not have posed an undue burden upon the NYSOMH.

48. Plaintiff suffered severe emotional distress as a direct and proximate cause of Defendant's preferential treatment as to male counterparts and as to Nurses under the age of 40, who were given the Day-Shift assignment during the period of time in question.

49. Plaintiff suffered monetary damages in the form of lost wages and lost benefits starting in July of 2020, for which she is entitled to relief.

50. Plaintiff's costs, including include attorneys' fees continue to accrue.

51. The present Complaint shall have been filed in the Federal District Court, Western District of New York, fewer than 90 days after receiving the Right To Sue letter from the Equal Employment Opportunity Commission.

52. Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

53. As a direct and proximate result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff has suffered damages in an amount to be determined at trial, including, but not limited to - lost wages, lost related fringe benefits, and other forms of compensation, including retirement benefits, as well as loss of career opportunity and advancement, in amounts to be determined at or before trial.

54. Defendant exhibited a preference for male Nurses at the Rochester Psychiatric Center, including but not limited to preferentially assigning shifts to male Nurses.

55. Defendant exhibited a preference for younger Nurses, under the age of 40, at the Rochester Psychiatric Center, including but not limited to preferentially assigning shifts to younger Nurses, and often Nurses who had only recently graduated from Nursing School.

**Count I: Disability Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973:**

56. Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, subjected Plaintiff to materially adverse actions in employment as set forth hereinabove, thus causing her temporary joblessness, pecuniary harm, physical and emotional distress damages as well as out of pocket costs and lost benefits.

57. Plaintiff is an individual with a disability within the meaning of Section 504 of the Rehabilitation Act statute because she was otherwise qualified for her position and to continued employment with NYSOMH, and she suffered an adverse employment action by being denied reasonable accommodation in employment because of her disability (Clinical Depression, Anxiety); and finally, NYSOMH receives Federal funding, thus NYSOMH has abrogated sovereign immunity as to this claim by statute.

**Count II. Disability Discrimination in violation of NYS Human Rights Law:**

58. Defendant discriminated against Plaintiff in employment on the basis of her disability in violation of N.Y. Exec. Law, art. 15 (NYS Human Rights law). Defendant discriminated against Plaintiff in employment on the basis of her disability in violation of NYS Human Rights law. Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, failed to accommodate her or to engage in the required interactive process, subjected her to adverse conditions in employment as set forth hereinabove, thus causing her temporary joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs.

**Counts III & IV: Age Discrimination in Violation of the Age Discrimination in Employment Act of 1967 and N.Y. Exec. Law, art. 15 (NYS Human Rights law):**

59. Defendant discriminated against Plaintiff, an employee over the age of 40 (born in 1959) when, because of Plaintiff's membership in said protected class, subjected her to adverse actions in employment as set forth hereinabove, including failing to follow applicable Seniority Policies when honoring same would have materially benefited Plaintiff in her employment, thus causing her temporary loss of active employment, loss of the ability to retire when Plaintiff had planned to retire, pecuniary harm, emotional distress damages as well as out of pocket costs.

60. Defendant treated Nurses under the age of 40, and often Nurses who had only recently graduated from Nursing School, preferentially to Plaintiff, and other Nurses who were over the age of 40, in the summer of 2020, when Defendant assigned the coveted Day-Shift to younger employees, under the age of 40, but ignored Plaintiff's request to work the Day-Shift because of her age.

**Counts V & VI: Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and N.Y. Exec. Law, art. 15 (NYS Human Rights law):**

61. Defendant assigned the Day-Shift to male Community Mental Health Nurses during the summer and fall of 2020 but treated Plaintiff, a female, disparately and less favorably than her male counterparts when Defendant refused to even consider the Day-Shift as requested by Plaintiff at relevant times, even when said request was medically necessary.

62. Defendant treated Plaintiff's male counterparts preferentially to female Nurses, including Plaintiff when it denied her the opportunity to work the Day-Shift in 2020 without any reasonable explanation for that denial.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from mistreating, or terminating qualified individuals from employment, discriminating against employees due to disability.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to all employees, and which protect employees from unlawful discrimination on the basis of disabilities, age, and sex.

11

C. Order Defendant Employer to make whole Jackie Germano by providing appropriate back pay, with prejudgment interest, and the value of all lost benefits of employment, in amounts to be determined at trial, but which damages meet the minimum amounts in controversy requirements in the present Court, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole Jackie Germano by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Jackie Germano by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S:// James D. Hartt
**JAMES D. HARTT, ESQ.,**
**Attorney For Plaintiff-Admitted to**
**Practice in WDNY Federal Court**
**6 N. Main Street, Suite 200-F**
**Fairport, NY 14450**
**Telephone: (585) 490-7100**
**Fax: 1 (716) 299-2006**

ORIGINAL of the foregoing was
filed this 6th Day of December 2022 with:
The Clerk of the Federal District Court
Western District New York District